| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------------ X<br>TINDRICK ZEIGLER,<br><br>                                  Plaintiff,<br>     -against-<br><br>C/O RICHARD MANTTARI, #1292, C/O PETER CUERVO, #1082, C/O CAROL GALLO, #335, C/O CURTIS WILLIAMS, #533, C/O NEIL MACDONALD, #648,<br><br>                                Defendants.<br>------------------------------------------------------------------------ X | For Online Publication Only<br><br><br><br><br>**MEMORANDUM & ORDER**<br>12-CV-4075 (JMA)(AKT)<br><br><br><br><br><br>**FILED**<br>**CLERK**<br>9/21/2016 5:00 pm<br>**U.S. DISTRICT COURT**<br>**EASTERN DISTRICT OF NEW YORK**<br>**LONG ISLAND OFFICE** |

**APPEARANCES:**
    Tindrick Zeigler
        *Pro se*

    Jessica M. Spencer
    Assistant County Attorney
    Dennis M. Brown, Suffolk County Attorney
    100 Veterans Memorial Highway
    P.O. Box 6100
    Hauppauge, New York 11788
        *Attorney for Defendants*

**AZRACK, United States District Judge:**

    Pro se plaintiff Tindrick Zeigler brings this suit under 42 U.S.C. § 1983 ("Section 1983"), asserting claims of excessive force and failure to intervene in violation of plaintiff's constitutional rights.  Currently pending before the Court are the parties' cross-motions for summary judgment. Defendants argue that plaintiff cannot recover on his federal claims because he failed to exhaust his administrative remedies, pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997(e) (the "PLRA").  Plaintiff asserts that there is no genuine issue of material fact that the officers used unconstitutional force against him or failed to intervene.  For the following reasons, both motions are denied.

# I. BACKGROUND

This action arises out of an alleged altercation between plaintiff and defendants, who are all corrections officers ("COs") at the Suffolk County Correctional Facility (the "facility") in Riverhead, New York. Plaintiff was a pre-trial detainee at the facility from August 2009 through September 2010. (Defs.' Rule 56.1 Counterstatement ("Defs.' 56.1") ¶ 1, ECF No. 59-2.) Plaintiff alleges that on January 26, 2010, defendants Richard Mantarri ("CO Mantarri") and Peter Cuervo ("CO Cuervo") assaulted him and used excessive force against him. Plaintiff alleges that defendants Curtis Williams ("CO Williams"), Neil MacDonald ("CO MacDonald"), and Carol Gallo ("CO Gallo") failed to intervene or prevent this conduct.

## A. The Incident on January 26, 2010

Although each side presents varying accounts of what occurred, it is undisputed that on January 26, 2010, at approximately 8:55 p.m., plaintiff was at an approved visit in the facility's visiting area. (Defs.' Rule 56.1 ¶ 1.)

According to plaintiff, during the visit, CO Mantarri jumped over a table behind plaintiff, called plaintiff a racial epithet, and yelled at plaintiff to "[g]ive it here[.]" (Pl.'s Rule 56.1 Statement ("Pl.'s 56.1") ¶ 2, ECF No. 42.) Plaintiff's hands were over his head for CO Mantarri to see them. (Id.) Then, CO Mantarri began punching plaintiff in the head, while yelling racial slurs and threatening to kill plaintiff. (Id. ¶ 3.) Plaintiff maintains that although he did not respond or struggle, CO Mantarri grabbed plaintiff around the neck and began to choke him to the ground. (Id. ¶ 4.) Then, CO Cuervo ran over and began to punch and kick plaintiff. (Id.)

Plaintiff maintains that several other corrections officers—defendants Williams, MacDonald, and Gallo—all deliberately failed to intervene in, or prevent, their co-defendants' conduct. (Id. ¶ 5.) Plaintiff was lifted up from the floor and taken to the visiting corridor. (Id.)

2

CO Mantarri yelled to CO MacDonald to hold plaintiff's visitor because "he passed [plaintiff] something!" (Id.)

According to plaintiff, he received a large laceration to his ear as a result of Mantarri's and Cuervo's punching and kicking. (Id. ¶ 6.) He states that he was taken to the medical department at the facility, where the nurse determined his laceration was too severe to be treated on-site. (Id.) Plaintiff maintains he was then transported to the Emergency Room at Peconic Bay Medical Center ("PBMC") for "immediate treatment." (Id. ¶ 7.)

As previously stated, defendants' account of the events during this visit varies from plaintiff's narrative. According to defendants, CO Mantarri did not jump over a table, but, instead, stepped over a bench to get on to the counter and walk around the glass partition that divides inmates from visitors. (Defs.' 56.1 ¶ 2.) Once on the other side, he stepped back down on to the floor. (Id.) CO Mantarri claims that plaintiff's hands were not over his head and that, instead, plaintiff's right hand was in his jumpsuit. (Id.) CO Mantarri denies yelling any racial slurs at plaintiff at any time. (Id. ¶¶ 2–3)

According to CO Mantarri, he wrapped his arms around plaintiff's chest to prevent plaintiff from moving his right hand any further into his jumpsuit. (Id. ¶ 4.) Plaintiff began to struggle as CO Mantarri attempted to restrain him. (Id.) Both CO Mantarri and CO Cuervo deny striking plaintiff or causing any injury to plaintiff. (Id. ¶¶ 3–4.) Based on this account, the other defendants deny that they failed to intervene because they assert that there was no wrongful conduct by COs Mantarri and Cuervo in the first place. (Id. ¶ 5.) CO Mantarri also denies that he yelled that plaintiff's visitor had passed plaintiff something. (Id.)

It is undisputed that plaintiff went to the facility's medical department after this incident. However, the parties also provide contradictory accounts of what happened at plaintiff's medical

3

examination. Although plaintiff maintains that he sustained lacerations to his ear from defendants' conduct, defendants submitted a conflicting affidavit from Licensed Nurse Practitioner Beth Ann Limmer, who had treated plaintiff that evening. (Id. ¶ 3; Aff. of Beth Ann Limmer ("Limmer Aff."), Ex. B to Defs.' Opp'n to Pl.'s Mot. for Summ. J., ECF No. 59-4.) According to Limmer, the examination revealed two lacerations inside plaintiff's right ear, but he stated to her: "I cut myself" and "it was an accident." (Limmer Aff. ¶ 4.) Limmer attests that her examination revealed no swelling to defendants' ears, face, head, or neck and that plaintiff made no complaints about any other injuries. (Id. ¶ 5.) Limmer further states that she sought to send plaintiff to PBMC that evening to close the laceration, but he refused treatment. (Id. ¶ 6.) Defendants produced an Informed Refusal of Treatment Form, signed by plaintiff. (Informed Refusal of Treatment Form, Ex. G to Defs.' Opp'n to Pl.'s Mot. for Summ. J., ECF No. 59-9.) Limmer put plaintiff on the "Sick Call List" to be seen the next day for evaluation. (Limmer Aff. ¶ 8.) Plaintiff was transported to PBMC the following afternoon, on January 27, 2010. (Defs.' 56.1; Inmate Hospital Transport Form, Ex. H to Defs.' Opp'n to Pl.'s Mot. for Summ. J., ECF No. 59-10.)

**B. Plaintiff's Grievances**

As explained further below, the Suffolk County Correctional Facility Handbook ("Inmate Handbook") provides the procedure by which a prisoner must file and exhaust his grievances. (Inmate Handbook, Ex. C to Defs.' Mot. for Summ. J., ECF No. 63-4.)

It is undisputed that plaintiff filed a grievance regarding the January 26, 2010 incident on a form dated February 17, 2010.[1] (Grievance Form, Ex. D to Defs.' Mot. for Summ. J., ECF 63-5.) This grievance alleges that plaintiff was assaulted by the visiting room officers on January 26,

---

[1] Plaintiff filed two additional grievances regarding the incident after this date, but those grievances were not included in the record. (Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs.' Mem.") at 4, ECF No. 63-13.)

4

2010, and that he received stitches inside of his right ear.  (Grievance Form.)  Plaintiff wrote that he still experienced pain, that he did not receive proper medical attention, and that he never had any disciplinary action taken against him for the incident.  (Id.)

In an affidavit submitted in opposition to defendants' motion, plaintiff claims that he actually filed an earlier grievance concerning the incident on January 28, 2010.  (Pl.'s Aff. in Opp'n to Defs.' Mot. for Summ. J. ¶ 8, ECF No 63-15.)  Plaintiff maintains that he handed this grievance to a female officer in the housing unit.  (Id.)  The record does not include a copy of this alleged grievance.  According to defendants, plaintiff did not file any grievances regarding the incident prior to February 17, 2010.[2]

The facility's Grievance Coordinator accepted plaintiff's February 17 grievance and investigated it before denying it on the merits.  (Grievance Investigation Form, Ex. E to Defs.' Mot. for Summ. J., ECF No. 63-6.)  Plaintiff's grievance was denied because, according to an incident report, CO Mantarri observed plaintiff attempting to hide contraband during the visit and then grabbed plaintiff around the upper body to restrain him.  (Id.)  According to the same incident report, plaintiff began to struggle before he was restrained and searched.  (Id.)  The Grievance Coordinator also found that plaintiff received proper medical treatment in a timely manner and that he did not receive a disciplinary report because no contraband was recovered after the incident.  (Id.)  Plaintiff then appealed the Grievance Coordinator's decision to the Chief Administrative Officer.  (Grievance Processing Unit Decision Form, Ex. F to Defs.' Mot. for Summ. J., ECF No. 63-7.)  The Chief Administrative Officer decided to uphold the Grievance Unit's decision and denied plaintiff's grievance.  (Grievance Appeal Form, Ex. G to Defs.' Mot. for Summ. J., ECF

---

[2] In support of this proposition, defendants cite "Exhibit J" to their motion, a Declaration by Matthew Bogert.  (See Defs.' Mem. at 3; Decl. of Jessica Spencer ¶ 2, ECF No. 63-1.)  However, no such declaration from Bogert is included in the record.  It is unnecessary to explore this discrepancy further because, as explained infra, defendants cannot prevail even if the February 17 grievance was the earliest grievance that plaintiff filed.

5

No. 63-8.) Plaintiff timely appealed this decision to the Citizens' Policy and Complaint Review Council at the Commission of Corrections. (Id.) The Council denied his appeal. (Letter from Citizen's Policy and Complaint Review Council, Ex. I to Defs.' Mot. for Summ. J., ECF No. 63-10.)

## C. The Current Action

Plaintiff filed this action in August 2012. Although the case was dormant for some time, Magistrate Judge Tomlinson granted defendants an extension of time by which to move for summary judgment on exhaustion grounds. (See Electronic Order dated March 4, 2015; Order dated September 16, 2015, ECF No. 43.) Plaintiff also moved for summary judgment, arguing that he is entitled to a judgment that the officers used excessive force against him or failed to intervene, in violation of his constitutional rights.

As explained below, defendants' motion for summary judgment is denied because plaintiff satisfied the exhaustion requirements when his untimely grievance was accepted and then denied on the merits. Plaintiff's motion for summary judgment is denied because there are material issues of fact as to whether defendants engaged in conduct that violated plaintiff's constitutional rights.

## II. DISCUSSION

### A. Standard on Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). The movant bears the burden of demonstrating that "no genuine issue of material fact exists." Marvel

Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "When ruling on a summary judgment motion, [the court] must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

To defeat a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. See Shannon v. New York City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003). However, "the trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

A pro se party's pleadings and briefs are liberally construed "to raise the strongest arguments they suggest." Hamlett v. Santander Consumer USA Inc., 931 F. Supp. 2d 451, 455 (E.D.N.Y. 2013) (quoting Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007)) (internal quotation marks omitted). However, "a pro se party's bald assertion, unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Olle v. Columbia Univ., 332 F. Supp. 2d 599, 607–08 (S.D.N.Y. 2004) aff'd, 136 F. App'x 383 (2d Cir. 2005) (internal quotation marks omitted).

7

**B. Standard for Exhaustion**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Therefore, the PLRA requires that prisoners who seek to bring claims under Section 1983 related to their prison conditions must exhaust the available remedies at that prison before they may proceed in federal court. Id. The PLRA's exhaustion requirement is mandatory. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016); see also Woodford v. Ngo, 548 U.S. 81, 84 (2006). Proper exhaustion of administrative remedies requires "'using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009) (quoting Woodford, 548 U.S. at 90)). However, the Second Circuit has held "that the exhaustion requirement of the PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority." Hill v. Curcione, 657 F.3d 116, 125 (2d Cir. 2011).

To determine whether a prisoner has properly exhausted his administrative remedies, the court looks to the state prison's own grievance procedures. Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009); see also Jones v. Bock, 549 U.S. 199, 218 (2007). Here, the Inmate Handbook describes a multi-tiered procedure by which a prisoner must file and exhaust his grievances. According to the Inmate Handbook, if an issue cannot be resolved with the officer assigned to the prisoner's housing unit, the inmate must file a grievance within five days of the act or occurrence giving rise to the grievance. (Inmate Handbook at 15; 9 N.Y.C.R.R. § 7032.4(d) (imposing five day time limit by which an inmate must file a grievance)). The inmate files a grievance by filling out a form, which is forwarded to the Housing Unit Sergeant, who may then forward it to the

8

Grievance Coordinator if the issue cannot be resolved. (Inmate Handbook at 15–16.) The Grievance Coordinator investigates the grievance and provides a written determination to the prisoner within five business days. (Id. at 16.) The inmate has two business days to appeal an unfavorable determination to the Warden. (Id.) The Warden provides a written determination within five business days, at which point the inmate may appeal an unfavorable determination within three business days to the State Commission of Correction. (Id.) The Commission renders a written determination within forty-five business days.

### C. Analysis of Exhaustion

Both sides present arguments that I address at the outset as threshold issues, which do not affect the outcome of this decision. First, plaintiff argues that defendants should not be allowed to assert failure to exhaust as an affirmative defense because defense counsel stated at a conference before Magistrate Judge Tomlinson that plaintiff complied with the PLRA.[3] Plaintiff's argument regarding the purported judicial admission is irrelevant because, even assuming that defendants are permitted to assert this affirmative defense, it is unsuccessful.

Second, after defendants filed their fully-briefed motion for summary judgment, plaintiff filed "Plaintiff's Motion in Re-Reply to Defendant's Summary Judgment" on January 28, 2016. Defendants oppose this additional submission, arguing it is an impermissible sur-reply. (Letter dated Feb. 1, 2016, ECF No. 66.) This issue is irrelevant because, even if the Court excluded plaintiff's additional papers, the Court would still deny defendants' motion.

---

[3] Plaintiff refers to a conference held before Judge Tomlinson on February 26, 2013, in which defense counsel stated "it does appear that Mr. Zeigler did comply with the PLRA . . . ." (Transcript of Proceedings held on Feb. 26, 2013, at 16, ECF No. 62.) Although this transcript was not included in the record on summary judgment, it is available on the docket.

9

Turning to the substance of the exhaustion issue, defendants contend that plaintiff failed to comply with the exhaustion requirement of the PLRA because he did not timely file his initial grievance. This argument fails.

In Hill, the Second Circuit held that "the exhaustion requirement of the PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority." 657 F.3d at 125. Thus, under these circumstances, it is irrelevant whether plaintiff filed a grievance within five days of the alleged assault. Defendants themselves concede in their papers that, although plaintiff's February 17 grievance was untimely, it "was accepted and investigated by the Grievance Unit [and] denied as a determination had been made that the inmate did receive proper medical attention." (Defs.' Mem. at 4, ECF No. 63-13; Grievance Form.) The record confirms that plaintiff's grievance was accepted, investigated, and addressed on the merits. The Grievance Coordinator determined that plaintiff had been restrained in the process of investigating him for contraband and that plaintiff had received proper medical treatment. (Grievance Form.) As a result, "the grievance has served its function of alerting the state and inviting corrective action." Hill, 657 F.3d at 125 (quoting Riccardo v. Rausch, 375 F.3d 521, 524 (7th Cir. 2004)).

It appears that, after filing the February 17 grievance, plaintiff then proceeded through each of the designated tiers of the grievance procedure. Nothing in the record indicates that plaintiff's grievance was denied as untimely. Moreover, defendants have not argued that plaintiff failed to properly exhaust his appeals.

Therefore, defendants' motion for summary judgment based on exhaustion is denied.

10

### D. **Plaintiff's Motion for Summary Judgment**

Plaintiff's motion for summary judgment is also denied. Although plaintiff contends that no issues of material fact preclude summary judgment, both sides have submitted evidence to support the conflicting accounts of what occurred on January 26, 2010. It is inappropriate for the Court to resolve these types of factual inconsistencies and credibility assessments on summary judgment. See Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987) (explaining that when parties provide conflicting accounts of facts, such as who initiated the use of force and how much force each individual used, the "[r]esolution of credibility conflicts and the choice between these conflicting versions are matters for the jury," and not to be determined by the court on summary judgment); Rosen v. City of New York, 667 F. Supp. 2d 355, 360 (S.D.N.Y. 2009) (finding that summary judgment must be denied on a pretrial detainee's failure to intervene claim when the plaintiff and the defendants offered conflicting accounts of what had occurred). Therefore, plaintiff's motion for summary judgment on his claims under Section 1983 is denied.

### III. CONCLUSION

For these reasons, defendants' motion for summary judgment and plaintiff's cross-motion for summary judgment are DENIED.

**SO ORDERED.**

Dated: September 21, 2016
Central Islip, New York

_____/s/ (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE